# EXHIBIT A

Mr. KENNEDY of Minnesota. Mr. Chairman, I yield myself such time as I may consume.

I would just respond, I agree with the gentlewoman. We ought to be giving more capacity to the States. Our amendment provides that, estimated by a study done by Mr. Poole, of, I would say, $50 billion. So we are turning away, by opposing this amendment, the $50 billion it could generate.

This is really a debate about whether we want to toll existing lanes and just bring in more revenue, or whether we want to add capacity. The Kennedy amendment adds more capacity.

In closing, I would just reiterate to try to clarify some of the factual errors that have potentially been espoused on behalf of this amendment. First of all, we do not affect existing tollways in the least. We do not effect the HOV to HOT conversions. We allow the three projects that were currently in law to allow new expansions, conversion of existing lanes to tolls. But beyond that, we put a limit so we stop the further expansion of just putting tolls on existing lanes, and we unquestionably provide far more authority than the underlying bill to add new lanes, new tar, and new concrete because the existing bill only limits it to three projects where there is an unlimited amount of increased projects funded by fees, providing they are new lanes charged electronically so there are no toll booths, and fees go away when it is paid for.

Again, I plead with Members to look at the underlying facts of the bill and look at the ones that are supported by highway users across the board and look at the ones supported by those looking for responsible government.

☐ 1545

Mr. OBERSTAR. Mr. Chairman, I yield myself the balance of my time.

Again, I urge my colleagues to resist the siren call of tolls. It all sounds so simple: We will add more lanes; we will add more concrete and asphalt if all you will let us do is impose a toll on it.

The very first tolling facility in the western world, apart from that in ancient India, was King Edward III in England who allowed one of his knights the authority to build a bridge over the Thames in exchange for charging a fee to cross that bridge. It was to be temporary to cover the cost of the bridge. Four hundred years later, the British Parliament removed the toll from that bridge.

Tolls just do not go away. Once you put them on, they are there forever. To toll the interstate that we have already paid for is an insult to the drivers of this country. This is the wrong thing to do. We have provided reasonable tolling in this bill that is pending before us. It is sensible, but to go in this direction would impose tolls on those who can least afford it, would have widespread tolling on the interstate for which we have already paid. It does not guarantee that States will not contract away their right to build other roads in proximity to toll roads as happened in California. They got sued by the tolling authority.

This is the wrong thing to do. We have got a reasonable bill. What we really need, and I would invite my dear friend and good colleague from Minnesota, support the $375 billion bill that this committee introduced. That is the way to get more concrete and asphalt poured on America's roadways. Defeat the tolling amendment.

Ms. JACKSON-LEE of Texas. Mr. Chairman, I rise in strong opposition to the amendment offered by the gentleman from Minnesota because of its direct and detrimental effect on the State of Texas. The amendment seeks to "streamline" tolling authority to charge tolls on new lands and dedicate toll revenues to user fee purposes, and restrict the authority to convert existing non-toll Interstate Highway lanes into tolled roads and then indefinitely toll those roads.

This amendment is an overboard proposal to address a smaller problem. Overall, it will diminish existing state jurisdiction, tolling authority, decisions regarding the time limit on tolls, and the use of toll revenues. Specifically, the Kennedy Amendment would hinder the State's ability to obtain financing for the expansion of the Katy Freeway because of the undue burden that it would levy.

Toll credits are a significant resource for transit providers because they can use them in lieu of obtaining a federal match—thereby greatly expediting the development of major projects that serve the communities. This amendment will cripple the value of the toll credit program.

Without the revenue from toll credits, Texas will have less funding for the reduction of congestion and the improvement of air quality. In reducing an otherwise viable revenue stream, this amendment would restrict local governments like Houston from choosing the best tool to respond to local conditions and priorities.

In addition, this proposal would prohibit the tolling of new interstates, including the I–69 Corridor, which lacks an alternate source of financing. The City of Houston already suffers from congestion and poor air quality.

Mr. Chairman, I oppose this amendment and urge my colleagues to join me.

The Acting CHAIRMAN (Mr. ISSA). The question is on the amendment offered by the gentleman from Minnesota (Mr. KENNEDY).

The question was taken; and the Acting Chairman announced that the noes appeared to have it.

Mr. KENNEDY of Minnesota. Mr. Chairman, I demand a recorded vote.

The Acting CHAIRMAN. Pursuant to clause 6 of rule XVIII, further proceedings on the amendment offered by the gentleman from Minnesota (Mr. KENNEDY) will be postponed.

The Chair understands the amendment No. 9 will not be offered at this time.

It is now in order to consider amendment No. 10 printed in part B of House Report 109–14.

AMENDMENT NO. 10 OFFERED BY MR. GRAVES

Mr. GRAVES. Mr. Chairman, I offer an amendment.

The Acting CHAIRMAN. The Clerk will designate the amendment.

The text of the amendment is as follows:

Amendment No. 10 offered by Mr. GRAVES:
At the end of subtitle D of title I, add the following (and conform the table of contents accordingly):

SEC. 14___. RENTED OR LEASED MOTOR VEHICLES.

(a) IN GENERAL.—Subchapter I of chapter 301 of title 49, United States Code, is amended by adding at the end the following:

"§ 30106. Rented or leased motor vehicle safety and responsibility

"(a) IN GENERAL.—An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—

"(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

"(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

"(b) FINANCIAL RESPONSIBILITY LAWS.—Nothing in this section supersedes the law of any State or political subdivision thereof—

"(1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or

"(2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.

"(c) APPLICABILITY AND EFFECTIVE DATE.—Notwithstanding any other provision of law, this section shall apply with respect to any action commenced on or after the date of enactment of this section without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment.

"(d) DEFINITIONS.—In this section, the following definitions apply:

"(1) AFFILIATE.—The term "affiliate" means a person other than the owner that directly or indirectly controls, is controlled by, or is under common control with the owner. In the preceding sentence, the term "control" means the power to direct the management and policies of a person whether through ownership of voting securities or otherwise.

"(2) OWNER.—The term 'owner' means a person who is—

"(A) a record or beneficial owner, holder of title, lessor, or lessee of a motor vehicle;

"(B) entitled to the use and possession of a motor vehicle subject to a security interest in another person; or

"(C) a lessor, lessee, or a bailee of a motor vehicle, in the trade or business of renting or leasing motor vehicles, having the use or possession thereof, under a lease, bailment, or otherwise.

"(3) PERSON.—The term 'person' means any individual, corporation, company, limited liability company, trust, association, firm, partnership, society, joint stock company, or any other entity.".

(b) CLERICAL AMENDMENT.—The analysis for such chapter is amended by inserting after the item relating to section 30105 the following:

"30106. Rented or leased motor vehicle safety and responsibility.".

The Acting CHAIRMAN. Pursuant to House Resolution 140, the gentleman from Missouri (Mr. GRAVES) and the

gentleman from Oregon (Mr. DEFAZIO) each will control 10 minutes.

The Chair recognizes the gentleman from Missouri (Mr. GRAVES).

Mr. GRAVES. Mr. Chairman, I yield myself such time as I may consume.

Mr. Chairman, I am here today to correct an inequity in the car and truck renting and leasing industry. By reforming vicarious liability to establish a national standard that all but a small handful of States already follow, we will restore fair competition to the car and truck renting and leasing industry and lower costs and increase choices for all consumers.

Currently, a small number of States impose vicarious liability or limitless liability without fault, on companies and their affiliates simply because they own a vehicle involved in an accident. Whether or not the vehicle was at fault is completely irrelevant in these situations. These vicarious liability lawsuits cost consumers nationwide over $100 million annually.

Vicarious liability laws apply where the accident occurs. It does not matter where the car or truck was rented or leased. Since companies cannot prevent their vehicles from being driven to a vicarious liability State, they cannot prevent their exposure to these laws and must raise their rates accordingly. These higher costs have driven many small companies out of business, reducing the consumer choice and competition that keeps costs down.

While this amendment seeks to level the playing field, I want to emphasize, I want to be very clear about this, that this provision will not allow car and truck renting and leasing companies to escape liability if they are at fault. Accident victims will continue to be compensated according to individual State law.

This is supported by the NFIB. It is supported by the U.S. Chamber of Commerce and the Alliance of Automobile Manufacturers. I ask my colleagues to support this commonsense reform measure to level the playing field so that consumers are protected.

Mr. Chairman, I reserve the balance of my time.

Mr. DEFAZIO. Mr. Chairman, I yield such time as he may consume to the gentleman from New York (Mr. NADLER).

Mr. NADLER. I thank the gentleman for yielding me this time.

Mr. Chairman, I rise in opposition to the amendment offered by the gentleman from Missouri (Mr. GRAVES) regarding vicarious liability for rental car companies. This amendment, if passed, would nullify the laws of 15 States and the District of Columbia and would have the disastrous effect of allowing rental car companies to lease vehicles to uninsured drivers with no recourse for innocent victims should an accident occur. Fifteen States and the District of Columbia allow rental car companies the freedom to lease cars to whomever they choose whether or not the customer has his or her own insurance. In exchange for this right, the companies are required by the State laws to assume responsibility when uninsured drivers cause injury and are financially unable to compensate the people they injure or kill. If the gentleman from Missouri's amendment were to pass, the innocent victim would have no recourse, no insurance company to sue.

This trade-off is in the best interest of both the States and the rental car companies. For example, my own State of New York is one of the most active rental car markets in the country. In New York City, many, many people do not own cars. Therefore, they do not have automobile insurance. If companies were allowed to rent cars only to insured drivers, and that is the natural result should this amendment pass, these States would allow companies to rent only to insured drivers, many New York residents would effectively have no access to rental cars and the rental car market would decline.

This situation is not unique to New York. Anybody, Republican or Democrat, who is from Arizona, Connecticut, Delaware, Iowa, Maine, Nevada, New York, Rhode Island, the District of Columbia, California, Florida, Idaho, Michigan, Minnesota, Oklahoma, and Wisconsin should not vote for this amendment, Republican or Democrat, unless you want to say to your State legislators: We are going to preempt the law of New York, of California, of Florida, wherever, because we know better. Many of these States are big tourism States. By holding rental car companies responsible for the out-of-state drivers who rent cars while vacationing, these States protect their own residents from negligent out-of-state drivers. Vicarious liability laws also protect innocent Americans from negligent foreign drivers. If a foreigner rents a car in New York City or Los Angeles, runs over a pedestrian and her child, and then flees the country, the injured family would be left with no remedy should this amendment pass. In fact, the Graves amendment would probably shift responsibility away from wrongdoers and onto taxpayers. That is not something we ought to do.

There is nothing wrong, Mr. Chairman, with a State deciding, a State making its own decision. We believe in that here, supposedly. There is nothing wrong with a State deciding that it is in the best interests of the people of that State for uninsured drivers to be able to rent cars, but to require the car rental companies to take vicarious liability so that we do not shift the burden of paying for an accident to the pedestrian, the innocent victim or to the hospital or to the taxpayers. It is a perfectly reasonable thing to do. And 15 States and the District of Columbia have done it. Why should Congress usurp the States' power to make this decision for themselves? What is the overriding Federal interest in preempting State laws on this subject?

Rental car companies reap lots of profits in these States. Any expense that results to them from these State laws, such as any insurance policy the rental car company itself has to carry to cover its liability, is simply passed on to the rental car drivers as a cost of doing business. If we are going to preempt State vicarious liability laws, we could require that any uninsured drivers must purchase insurance themselves from the rental car company, but no such requirement is included in this amendment.

To pass this amendment is to say that we are going to obviate the policy choices of these States and shift the burden of any accidents to innocent victims of accidents in those States. We should not do it. The States should decide this question as they have. I urge my colleagues to oppose this amendment.

Mr. GRAVES. Mr. Chairman, I yield myself 30 seconds.

Quickly, Mr. Chairman, there are no uninsured rental vehicles on the road. Every single rental vehicle out there has to meet the State's minimum requirements for insurance. There is recourse. States put drivers on the road. Rental vehicle companies put cars on the road. They should be responsible for their equipment. Drivers should be responsible for themselves. But there is no uninsured rental vehicles on the road today.

Mr. Chairman, I yield 2 minutes to my good friend, the gentleman from Missouri (Mr. BLUNT), the majority whip.

Mr. BLUNT. Mr. Chairman, I want to commend my colleague from Missouri for his work on this important issue. Even well-intentioned laws do not always make good sense and this is one of those times. Find me an American who believes that a driver who rents a car and causes an accident is not in the wrong, and the rental company is. You might be able to find that on the Floor of the House. I do not think you can find that out there where this passes the commonsense test with Americans.

Holding rental and leasing companies responsible for the actions of their renters drives up the cost of renting a vehicle for all consumers. As was just pointed out, this insurance that is added to protect the company is added to every single person that rents a car, those very same people that the gentleman from Missouri pointed out already have to show proof of their own insurance. This arbitrary regulation costs small and large companies more than $100 million each year. In turn, small companies are getting run out of this business, and also this limits choices and competition for the customers when that happens.

The gentleman from Missouri's amendment will establish a fair national standard for liability: A rental or leasing company will only be liable in instances where the company is negligent or at fault. I think we can all agree, Mr. Chairman, that it makes good sense and will help limit the cost of renting cars to consumers. I ask my

colleagues to support this important reform.

Mr. DEFAZIO. Mr. Chairman, I yield myself 30 seconds.

The gentleman would preempt States' rights which is, I do not believe, a position that Congress should be taking, but he said, don't worry, those States require some sort of minimum of insurance and people would be covered. If people would be covered, then why is the potential liability or the actual liability as according to the previous speaker so large to those companies? It must mean that the levels of insurance are pretty inadequate. If they had adequate insurance or if they were required to carry adequate insurance, then this might be a supportable position, but to defer to the States who might have inadequate insurance and then leave potential injured persons hanging out there and preempt the States, I think, is unconscionable for this Congress.

Mr. Chairman, I yield 2 minutes to the gentleman from Michigan (Mr. CONYERS), the ranking member on the Committee on the Judiciary.

Mr. CONYERS. Mr. Chairman, I thank the gentleman from Oregon for yielding me this time, and I want to commend him and the ranking subcommittee member, the gentleman from New York (Mr. NADLER), for their excellent work in rebutting the notion offered by the gentleman from Missouri (Mr. GRAVES) about protecting the rental car industry and the leasing industry. That is what this is. Because what is wrong with requiring that the rental and leasing car companies assume responsibility when uninsured drivers they rent to cause injury and cannot compensate the victim? This is another one of a long line of issues, legal, in which we reduce the supports of the citizen and make them more open and more vulnerable. If a driver harms an individual and cannot compensate for their injury, the rental company should do so. What is wrong with that? Vicarious liability guarantees that the victims are not left to shoulder the costs of injuries caused by negligent rental car drivers and companies.

Take the case of the gentleman from New York (Mr. NADLER). New York City, I have been in cabs where we have wrecks downtown in Manhattan. Car rental is a very dangerous activity. For us not to require this backup from the car rental industry would be a travesty. And so I am hoping that we will just do something for the consumers. By the way, Members, that is what you have in your district, consumers of a product that need a little insurance backup when necessary. And to knock that out in the cavalier manner that is being proposed is preposterous.

I rise in strong opposition to the amendment offered by Mr. GRAVES of Missouri. This provision is nothing more than a special interest sham designed to unfairly and unjustifiably protect the very profitable car rental and leasing industry and harm innocent bystanders.

Vicarious liability protects innocent bystanders from injuries caused by irresponsible drivers of rented cars. In exchange for the right to rent or lease to whomever the car companies chooses, fifteen states, including my own state of Michigan, require that rental and leasing car companies assume the responsibility when uninsured drivers cause injury and cannot compensate the victim. Thus, when a car rental company allows an uninsured driver to drive a rental vehicle, they do so, understanding the risk created by that action. If a driver harms an individual and cannot compensate for the injury, the rental company should do so. Vicarious liability guarantees that victims are not left to shoulder the cost of their injuries caused by negligent rental car drivers and companies that put these uninsured drivers on the road.

New York City is a case in point. It has one of the most active car rental markets in the country and a huge number of uninsured drivers that rent cars due to the car ownership rates in NYC. New York has forbidden car rental companies to ask their customers if they own auto insurance, in order to allow the largest number of people access to rented cars. Since New York has made the policy decision to mandate car rental companies to rent to uninsured drivers, New York needs vicarious liability to protect innocent bystanders who are injured by these uninsured drivers. Eliminating vicarious liability would be disastrous for the citizens of New York, leaving injured people to shoulder their own costs of injuries unforeseen and prevent.

It is also important to note that the issue of preempting state liability is under the jurisdiction of the Committee on the Judiciary, of which I am the Ranking Member, and no hearings have been held to examine the appropriateness of the language which would be included in the legislation should the amendment pass. It is irresponsible to allow this provision to be debated on the House floor without a committee of jurisdiction's careful review.

I also object to the retroactive and unfair nature of the amendment. As a matter of equity, it is unfair to change the rules of litigation in the middle of the game. If a victim brings a lawsuit based on a particular set of laws and principles, it is simply unfair to alter those rules and principles after the fact. In addition to suffering a harm, the plaintiff may have expended significant time and resources in the litigation, and it is inequitable for Congress to unilaterally dismiss that claim without providing the harmed party with his or her day in court.

Additionally, the principles of federalism dictate that in all but the most exceptional cases, tort law should be left to the states. Tort law has traditionally been handled by the state legislative and court systems under a framework established by our founders. In fact, there are fifteen states that are ably handling this issue of vicarious liability. Congress should not depart from its long tradition of letting courts decide new cases before considering stepping in to alter the law where it believes the results are contrary to the public interest.

This amendment has no other purpose than to protect big rental and leasing companies at the expense of accident victims. I am appalled at the effort to leave innocent bystanders without recourse and believe this amendment has no place in this Transportation Reauthorization legislation that is before us today. I strongly urge my colleagues to oppose this amendment and vote no.

Mr. GRAVES. Mr. Chairman, I yield myself 15 seconds.

Mr. Chairman, vicarious liability does not protect against uninsured drivers. It simply provides higher compensation based solely on the fact that the individual owns the vehicle. We are not absolving these companies of liability if they are at fault. What we are doing is eliminating vicarious liability simply because they own the vehicle.

Mr. Chairman, I yield 2 minutes to my friend, the gentleman from Virginia (Mr. BOUCHER) who is a cosponsor of this legislation.

☐ 1600

(Mr. BOUCHER asked and was given permission to revise and extend his remarks.)

Mr. BOUCHER. Mr. Chairman, I thank the gentleman for yielding me time, and I am pleased to join him in offering this amendment today and to urge its adoption in the committee. It will eliminate antiquated vicarious liability statutes and, at the same time, benefit the consumers who rent automobiles.

Vicarious liability laws for rental cars in a handful of States drive up costs for consumers nationwide by an average of $100 million annually. These laws allow unlimited damages against companies that rent vehicles solely because the company owns the vehicle that is involved in the accident, not because the company has done anything wrong. These companies are not negligent, they are not at fault, they could have done nothing to have prevented the accident.

Consumers pay $100 million annually resulting from these unfair laws because companies must bill the costs of these arbitrary damage awards into their rental and lease rates. Regardless of where a car or truck rental company is headquartered or where the vehicle is rented or leased, the company is subject to vicarious liability when its vehicle is driven to a vicarious liability State and is then involved in an accident. Therefore, the laws of a mere handful of States are driving up the rental rates for rental consumers nationwide.

The amendment offered by the gentleman from Missouri (Mr. GRAVES), which I am pleased to cosponsor, will eliminate these unwarranted vicarious liability laws and broadly benefit the renters of automobiles nationwide. I commend the gentleman for introducing the amendment, and I urge its adoption in the committee.

Mr. DEFAZIO. Mr. Chairman, I yield myself 15 seconds.

Mr. Chairman, I would just address a question to the gentleman. You say they are already covered. Well, if someone rents a car in a State that has 10/20 insurance, $10,000/$20,000, and they drive next door to a State that has $100,000/$300,000 and they have an accident, I guess you only get 10/20. So you

Case 1:05-cv-02305-CKK   Document 19-2   Filed 01/20/2006   Page 5 of 5

are saying it only affects these States. It would affect all States, if you remove this liability as they cross State lines.

Mr. Chairman, I would yield on the gentleman's own time to answer that question, if he would.

Mr. GRAVES. Mr. Chairman, I yield 1½ minutes to my friend, the gentleman from Texas (Mr. SMITH).

Mr. SMITH of Texas. Mr. Chairman, I thank the gentleman from Missouri for yielding me time, and I do support the Graves-Boucher amendment.

This commonsense amendment would prevent car and truck rental companies from being held liable for injury and property damage in situations where they are not at fault. Currently, some States allow vehicle rental companies to be held vicariously liable. This means they are held responsible even when they are not at fault.

When a company rents a car or truck and has no way to foresee or prevent an accident, they should not be held liable simply because they have deep pockets. The Graves-Boucher amendment would create a national standard, providing that vehicle rental companies can only be held liable in situations where they have actually been negligent. This amendment in no way lets companies off the hook when they have been negligent.

Mr. Chairman, I support the Graves-Boucher amendment because it requires the legal system to treat vehicle rental companies fairly.

Mr. DEFAZIO. Mr. Chairman, I yield 2 minutes to the gentleman from Minnesota (Mr. OBERSTAR).

Mr. OBERSTAR. Mr. Chairman, this is a very specious argument that we have before us. The rental company has insurance, so that makes everything fine, except that the amendment relieves the rental company of the liability on their insurance, except in the case of negligence. That does not make any sense whatever.

If I have a vehicle and allow someone else to use that vehicle and that person has an accident, I am the one that is liable. Why should a car rental company be any different than the individual? The answer is they have got a good lobby and they are lobbying for this amendment. They are lobbying to free themselves of responsibility and liability. That is not right.

States have different rules. What is wrong with respecting State rules? States have adopted a policy that has concluded that without the kind of protection the gentleman would like to remove, harm to innocent children, harm to bystanders, would go totally uncompensated, even if the rental car company leased the vehicle to an obvious drug abuser or to someone who has a history of a very bad driving record.

That is wrong. We should not be in the business of wholesale removal of liability for responsibility.

Mr. GRAVES. Mr. Chairman, I yield myself the balance of my time.

Mr. Chairman, think about the statement that the opposition makes, that this amendment releases the rental industry except in the case of negligence. Think about that for just a minute. They should be liable in the case of negligence. They should not be liable for the action of their drivers.

The fact of the matter is, there are no uninsured vehicles on the road. In the case of an individual's car, you have a choice of who you are going to loan that car to. A rental company has to rent to a qualified driver. If they have a driver's license and they meet the State's minimum requirements, they have to rent to them.

Mr. Chairman, it is frustrating when there is so much misinformation out there about bills like this. There are three points that I want to make and I want to be very clear on.

Just remember, rental car companies do not put drivers on the road. States do. Rental car companies put cars on the road. They should not be liable for the action of the drivers. They should be liable for the their negligence or for their equipment, but they should not be liable for the action of their drivers.

Second, there are no uninsured rental vehicles on the road today. Those vehicles, before they can even be registered, have to meet the State's minimum requirements for insurance. That is up to the States. Let the States deal with that, just as what was pointed out. But there are no uninsured rental vehicles on the roads today. There is compensation or means for compensation to folks out there who might be harmed.

The third thing, and let us be very, very clear on this, this proposal would not exempt rental and leasing companies from the liability involved with their equipment. They are still liable and should be liable for negligence when it deals with their equipment, but they should not be liable for the actions of drivers. If you rent a vehicle in a non-vicarious liability State and drive it into a State such as New York, they are liable, unlimited liability, just because they own the car. That is not right.

Mr. Chairman, I urge adoption of this and hope my colleagues can support me.

Mr. DEFAZIO. Mr. Chairman, I yield myself such time as I may consume.

Mr. Chairman, again the gentleman did not answer my question. Rent a car in a 10/20 State, drive it into a 100/300 State, that car is essentially not insured for the purposes of that State.

Mr. Chairman, I yield the balance of my time to the gentleman from New York (Mr. NADLER).

Mr. NADLER. Mr. Chairman, I thank the gentleman for yielding me time.

Mr. Chairman, the gentleman from Missouri says why should a company that rents a car to an individual, the company is not negligent, the individual is negligent, why should they be liable for the results of his or her negligence?

The answer is that is up to the State legislature. The State legislature may prefer that the person who must pay the medical bills should be the insurance company of the lessor company, rather than the innocent victim who is walking along with her baby stroller. We want people to be protected. There are cars that are insured to $10,000 and $20,000, they drive into a State with a high cost of living, with a high cost of medical care, that requires of its own domestic drivers $100,000 and $300,000, and there is no guarantee.

So the real answer is why should not New York or California or these other States be able to say we want to protect our citizens against non-resident drivers who are negligent, against foreign tourists from France who are negligent.

The real question is, should the insurance company bear the risk, the insurance company of the lessor company bear the risk, or should the woman with the baby stroller bear the risk? If I were running for the State legislature, I would say the insurance company. Here I say it is up to the legislature, not to us. Vote against this amendment.

The Acting CHAIRMAN (Mr. LAHOOD). The question is on the amendment offered by the gentleman from Missouri (Mr. GRAVES).

The question was taken; and the Acting Chairman announced that the ayes appeared to have it.

Mr. OBERSTAR. Mr. Chairman, I demand a recorded vote, and pending that, I make the point of order that a quorum is not present.

The Acting CHAIRMAN. Pursuant to clause 6 of rule XVIII, further proceedings on the amendment offered by the gentleman from Missouri (Mr. GRAVES) will be postponed.

The point of no quorum is considered withdrawn.

SEQUENTIAL VOTES POSTPONED IN COMMITTEE OF THE WHOLE

The Acting CHAIRMAN. Pursuant to clause 6 of rule XVIII, proceedings will now resume on those amendments on which further proceedings were postponed, in the following order: amendment offered by Mr. OSBORNE of Nebraska; amendment offered by Mr. KENNEDY of Minnesota; and amendment offered by Mr. GRAVES of Missouri.

The Chair will reduce to 5 minutes the time for any electronic vote after the first vote in this series.

AMENDMENT NO. 6 OFFERED BY MR. OSBORNE

The Acting CHAIRMAN. The pending business is the demand for a recorded vote on amendment No. 6, printed in part B of House Report 109–14, offered by the gentleman from Nebraska (Mr. OSBORNE), on which further proceedings were postponed and on which the ayes prevailed by voice vote.

The Clerk will redesignate the amendment.

The Clerk redesignated the amendment.

RECORDED VOTE

The Acting CHAIRMAN. A recorded vote has been demanded.